UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALTON DAVIS,

               Petitioner,

    -vs-

SUPERINTENDENT
CLINTON CORRECTIONAL FACILITY

              Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-0392T**

## I.   Introduction

*Pro se* Petitioner Alton Davis ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered October 22, 2007, in New York State, Supreme Court, Erie County (Hon. Russell P. Buscaglia), convicting him, after a jury trial, of two counts of Assault in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 120.05 [1], [2]);  Rape in the First Degree (Penal Law § 130.35 [1]), Robbery in the First Degree (Penal Law § 160.15 [3]), and Robbery in the Second Degree (Penal Law § 160.10 [2][a]).  Petitioner was subsequently sentenced as a persistent violent felony offender to an indeterminate term of imprisonment of 25 years to life.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

Under Indictment No. 00121-2007, Petitioner was charged with two counts of Assault in the Second Degree (Penal Law §§ 120.05 [1], [2]), Rape in the First Degree (Penal Law § 130.35 [1]), Robbery in the First Degree (Penal Law § 160.15 [3]), Robbery in the Second Degree (Penal Law § 160.10 [2][a]), and two counts of Burglary in the First Degree (Penal Law §§ 140.30 [2],[3]).   See Ind. No. 00121-2007 dated 02/09/07 at Resp't Ex. A.

In the summer of 2006, Wanda Young ("Young" or "the victim") and Petitioner met at a used furniture store where they were both working at the time.   T.T. 397-399.   Young and Petitioner began spending time together outside of the workplace, and Young would invite Petitioner to her apartment where she lived alone.   T.T. 399, 401.   In the fall of 2006, Petitioner, whom Young considered a friend, moved into Young's apartment.   Young and Petitioner agreed that Petitioner would rent one of the two bedrooms and pay half of the rent, which amounted to $132.50 per month.   T.T. 558. After he moved in, Petitioner began asking Young for sex.   Young refused Petitioner's requests.   On two separate occasions, Petitioner offered Young money for sex, and Young, who agreed to have sex with him both times, received $10 on each occasion.[1]

---

[1]       At trial, Young testified that the last time she had sex with Petitioner in exchange for money was "about a month" before January 6, 2007. T.T. 404.

Despite their sexual episodes, Young regarded Petitioner as her roommate and not her boyfriend.  T.T. 403, 406, 499, 504, 510.

Petitioner paid his share of the rent for the month of October, but paid nothing for November or December.  In early January 2007, Petitioner gave Young $200 for back-rent.  T.T. 406-409.

On January 5, 2007 at around 9:00 or 10:00 p.m., Young used marijuana and crack cocaine with a male friend at her apartment. A few hours later, on January 6, 2007, at approximately 1:00 a.m., Petitioner returned to the apartment, and Young introduced Petitioner to her friend as her roommate.  Young's friend left the apartment.  After the friend left, Petitioner looked at Young "like something was wrong."  T.T. 410-412.  Because she was frightened by the manner in which Petitioner looked at her, Young left the apartment with the intention of staying at a girlfriend's house. Young's girlfriend refused to let Young stay with her, and Young returned to her apartment around 2:00 or 3:00 a.m.  Young went to her bedroom and began to undress.  Shortly thereafter, Petitioner, who was in the kitchen, asked Young why she had eaten his candy bar which has been in the refrigerator.  Petitioner then walked into Young's bedroom and the two engaged in an argument at which time Young told Petitioner that he "was not [her] man."  T.T. 412-414. Thereafter, Petitioner punched Young on both sides of her face. Young fell backwards onto her bed.  Petitioner then got on top of

Young and repeatedly continued to punch her with both fists on both sides of her face. Young turned over onto her stomach, and lifted her arms and hands to protect her face. Petitioner continued to punch Young, and then pushed her face into the mattress. Young moved her right arm so she could reposition herself, at which time Petitioner grabbed her arm, braced it with his body, told Young he was going to break her arm, and then snapped it, breaking her arm. T.T. 414-418. Young immediately began screaming from the pain. T.T. 419. Petitioner then grabbed a chair and placed it in the doorway to block Young from exiting the room. Young pleaded with Petitioner to let her call an ambulance. Petitioner told Young he could reset her arm, stating, "I know where it popped out. I know where I broke it, right at your elbow." Petitioner then forcefully jerked Young's arm downward, causing her extreme pain. T.T. 420-421. The downstairs neighbor, Eddie Atkinson ("Atkinson"), heard the victim screaming, but went back to sleep after the screaming stopped. T.T. 567.

Petitioner then stood in front of the victim and stated, "[s]ince I'm not going to get no sex no more, you might as well pull off your clothes and let me get some now." T.T. 421-422. The victim, who was scared and in pain, told Petitioner she would let him do anything so long as she could get to the hospital. Young did not physically resist Petitioner. Petitioner took Young's

clothes off, climbed on top of her, and engaged in sexual intercourse with her.  T.T. 423-424.

Petitioner then dressed himself, and helped the victim with her clothes.  Petitioner took the money that he had given Young for the back-rent, which was on her night-stand, and walked with her downstairs.  He gave the victim her cell phone and told her to call 911.  Young did so while Petitioner stood next to her.  Young told 911 personnel that she "fell down drunk and broke [her] arm."  T.T. 424-425, 552.

The victim was taken to the hospital, and her broken arm was put in a brace.  She was given pain medication, told to return in two weeks, and then released.  Young went to have her prescription filled and then returned home.  When she returned to her apartment, Petitioner was waiting for her and he asked her if her arm was broken.  Atkinson had earlier let Petitioner into the building around 6:00 a.m. after he heard Petitioner trying to kick in the outside door.  Young told Petitioner that her arm was broken, and pretended to be returning for her insurance benefit card so she could go to the pharmacy.  She then left the apartment, called the police, and reported the rape and assault.  T.T. 437-438, 568.

The police arrived and searched the apartment.  Petitioner was not found.  The police left and the victim called a male friend and requested that he stay with her for safety.  The friend responded and stayed for approximately ten to twenty minutes.  After the

friend left, Young propped the door to her apartment open with a small shovel so that the friend could return. Young grabbed a knife and placed it on her kitchen table within reach of where she was sitting. Petitioner then crawled out from underneath the bed in her bedroom with a hammer in his hand. T.T. 439-442.

The victim froze in fear. Petitioner slammed the apartment door shut and started choking Young, pushing her against the refrigerator. Young bit Petitioner's finger in an attempt to stop him from choking her. Petitioner then hit Young in the head with the hammer and bit her left cheek. Blood began dripping down Young's face. Petitioner demanded that Young give him her pain medication and her money. Young complied, giving Petitioner the pills from her jacket and $45 from her pocket. Petitioner then fled. T.T. 443-447.

Seconds later, the same police officers who had earlier searched the apartment, returned. T.T. 447. Atkinson, who had heard the screaming, had called the police. Upon entering the apartment, Officer Oliver Hemphill of the Buffalo Police Department ("BPD") discovered Young injured and covered in blood. T.T. 590. The victim was transported to the hospital, where she told hospital personnel the truth about her injuries. Young received stitches to

her head, a rape test kit was performed upon her,[2] and photographs were taken of her injuries.   T.T. 677.

Detective Nicole Jones of the BPD went to the victim's apartment after Young was taken by ambulance to the hospital. Detective Jones secured the scene and requested assistance from the Evidence Collections Unit.   T.T. 605-606.   Detective Jones also went to the hospital and interviewed Young, taking a statement from her and noting her injuries, which included a gash on her forehead, a bite mark on her cheek, a swollen jaw, scratches and bruises about her face, and her arm in a sling.   T.T. 607-608.   Detective Jones also took a statement from Atkinson.   T.T. 606, 608.

After a jury trial, Petitioner was found guilty of all counts of the indictment, except the two counts charging burglary in the first degree.   T.T. 862-863.   He was subsequently sentenced as a persistent violent felony offender to an indeterminate term of imprisonment of 25 years to life for each of the five counts, each to be served concurrently.   Sentencing Mins. [S.M.] 12; see also Certificate of Conviction-Imprisonment at Resp't Ex. A.

The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction on November 13, 2009, and leave to

---

[2]       Sperm was detected in the victim's vagina.   T.T. 694.   The sperm fraction of the vaginal DNA swab matched the DNA profile obtained from Petitioner.   T.T. 695.

appeal was denied.  <u>People v. Davis</u>, 67 A.D.3d 1397 (4th Dep't 2009), <u>lv. denied</u>, 13 N.Y.3d 938 (2010).

No collateral motions were filed.

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of counsel; (2) that the trial court erred in permitting the prosecutor to elicit the testimony of a police detective on re-direct examination concerning pre-trial statements made by the victim that bolstered her trial testimony; and (3) the verdict was against the weight of the evidence. <u>See</u> Pet. ¶ 22A-D (Dkt. No. 1).

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by

[the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not <em>dicta</em>) of the Supreme Court existing at the time of the relevant state-court decision.  <u>Williams</u>, 529 U.S. at 412;  <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case.  <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10.  "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently."  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001).  Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."  <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);  see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."  28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."  Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  However, "[f]or exhaustion purposes, 'a

federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id. When a petitioner no longer has "remedies available" in the state courts, because he is procedurally barred by state law from raising such claims, the habeas court may deem the claims exhausted but procedurally defaulted. Id. at 120-21 (quoting Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990)).

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

## IV.   Petitioner's Claims

### 1.   Ineffective Assistance of Counsel (Ground One)

Petitioner argues, for the first time in the habeas petition, that he received ineffective assistance of trial counsel based on the following:  that counsel failed to obtain a copy of the grand jury minutes; and that an improper association existed between counsel and the trial court judge that undermined the integrity of the proceedings.  See Pet. ¶ 22A.  As discussed below, Petitioner's ineffective assistance of trial counsel claim provides no basis for habeas relief.

#### (A)   Trial Counsel Failed to Obtain a Copy of the Grand Jury Minutes

Petitioner argues that he received ineffective assistance of trial counsel based on counsel's alleged failure to obtain a copy of the grand jury minutes.  See Pet. ¶ 22A.  Because Petitioner raises this claim for the first time in the habeas petition, it is unexhausted.  See 28 U.S.C. § 2254(b).  Nonetheless, because Petitioner no longer has a state court forum within which to raise this record-based claim, the Court deems it exhausted but procedurally defaulted.  See Grey, 933 F.2d at 120; see also Ramirez v. Att'y General, 280 F.3d 87, 94 (2d Cir. 2001) (even where federal claim has not been fairly presented to the state courts, it will be deemed exhausted if it is subject to a procedural bar under state law).

Here, Petitioner cannot return to state court because he has already taken the one direct appeal and one application for leave to appeal to the New York Court of appeals to which he is entitled. See N.Y. Court R. 500.20. It is true that "New York courts have held that some ineffective assistance claims are 'not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record." Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 1983) (quotation and citation omitted)). However, this claim pertains to matters that are readily discernable on the trial record and could have been, but unjustifiably was not, raised on direct appeal. Thus, collateral review of this claim (by way of a N.Y. Crim. Proc. Law ("CPL") § 440.10 motion) is foreclosed. See CPL § 440.10(2)(c) (barring review if a claim could have been raised on direct review). Because Petitioner no longer has remedies available in the state courts, his claim is deemed exhausted and procedurally defaulted. See Grey, 933 F.2d at 120.

Petitioner's procedurally defaulted claim may be reviewed by this Court only if he can demonstrate cause for the default and actual prejudice resulting therefrom, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 485, 496 (1986). Petitioner has not alleged cause and prejudice to overcome the procedural default, nor has he endeavored to demonstrate that this

Court's failure to review the claim will result in a miscarriage of justice.   Accordingly,  Petitioner's  claim  that  he  received ineffective assistance of trial counsel based on counsel's failure to  obtain  a  copy  of  the  grand  jury  minutes  is  dismissed  as procedurally defaulted.

### (2)   Improper Association between Trial Counsel and Trial Court Judge

Petitioner contends that he received ineffective assistance of counsel as a result of an improper association between counsel and the trial court judge.   <u>See</u> Pet. ¶ 22A.   Because Petitioner raises this claim for the first time in the habeas petition, it too is also unexhausted.   However, unlike the ineffective assistance of counsel claim discussed above at section IV, 1(1), this claim involves matters *dehors* the record which could still be raised in a  motion  for  vacatur  in  state  court.   Nonetheless,  the  Court dismisses  the  claim  on  the  merits,  pursuant  to  28  U.S.C. § 2254(b)(2).[3]

---

[3]

The  standard  of  review  federal  district  courts  are  to  consider  when reviewing  unexhausted  claims  is  not  settled  in  this  Circuit.   <u>Severino  v. Phillips</u>, No. 05 Civ. 475, 2008 U.S. Dist. LEXIS 122313, *33 (S.D.N.Y. Aug. 25, 2008).  Most courts in this Circuit which have addressed this issue have opined that  unexhausted  claims  are  to  be  dismissed  when  the  court  finds  them  to  be "patently  frivolous."   <u>Severino</u>,  2008  U.S.  Dist.  LEXIS  122313  at  *33  (citing <u>Brown  v.  State  of  New  York</u>,  374  F.Supp.2d  314,  318  (W.D.N.Y.2005))  (citation omitted).   A  minority  of  district  courts,  however,  have  concluded  that  the dismissal of such claims is warranted when the court determines that "it is perfectly  clear  that  the  petitioner  does  not  raise  even  a  colorable  federal claim."   <u>Severino</u>,  2008  U.S.  Dist.  LEXIS  122313  at  *33  (internal  quotations  and citations omitted).  Petitioner's claims are subject to dismissal regardless of the standard utilized.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. Petitioner cannot meet the standard set forth in Strickland.

Petitioner alleges, without citing any supporting facts or pointing to any evidence whatsoever, that he received ineffective assistance of counsel based upon an improper association between his attorney and the trial court judge. See Pet. ¶ 22A. Petitioner does not explain the nature of this alleged improper association, nor does he even suggest how or in what way this

alleged improper association affected his attorney's performance and/or the outcome of his trial.  Petitioner simply contends, by way of vague, conclusory assertion, that "my counsel was not doing what he was supposed to do.  Him and the Judge was friend.  That made me feel I was not getting judge right."  Pet. ¶ 22A. Petitioner has failed to assert a viable habeas claim.  His claim provides no foundation upon which a claim of ineffective assistance of counsel can be made, and a federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation.  Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support");  see Osinoiki v. Riley, CV-90-2097, 1990 U.S. Dist. LEXIS 13327, at *6-7 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden");  Skeete v. People of New York State, No. 03-CV-2903, 2003 U.S. Dist. LEXIS 20675, *5 (E.D.N.Y. Nov. 17, 2003) (vague, unsupported allegations of constitutional violations and errors during petitioner's state trial did not assert a viable habeas claim.).  Petitioner's claim that he received ineffective assistance of trial counsel based upon an improper association between his trial attorney and the trial court judge -- which is vague, conclusory in nature, and based on nothing more than rank speculation -- is meritless and is therefore dismissed.

In sum, the Court finds that Petitioner's ineffective assistance of counsel claim, as a whole, provides no basis for habeas relief, and is dismissed in its entirety.

## 2. Trial Court Error (Ground Two)

In ground two of the petition, Petitioner appears to argue, as he did on direct appeal, that the trial court erred in permitting the prosecutor to elicit testimony of Detective Jones on redirect examination concerning pre-trial statements made by the victim that bolstered her trial testimony. See Pet. ¶ 22B; see also Pet'r Br. on Appeal, Point One at Resp't Ex. B. The Appellate Division, Fourth Department rejected this claim, finding that:

> We agree with defendant that Supreme Court erred . . . . Although the prosecutor's redirect examination was far too extensive to be justified under the opening the door theory, the erroneous admission of the testimony is harmless. The evidence of defendant's guilt is overwhelming, and there is no significant probability that defendant would have been acquitted but for the error."

Davis, 67 A.D.3d at 1397 (internal citations and quotations omitted) (alterations in original). As discussed below, this claim provides no basis for habeas relief.

"On federal habeas review of a state court criminal conviction, courts are to apply the harmless error standard enunciated in Brecht v. Abrahamson, 507 U.S. 619 (1993), in ascertaining whether a petitioner alleging trial court error is

entitled to the relief he seeks." <u>Moss v. Phillips</u>, No. 9:03-CV-1496, 2008 U.S. Dist. LEXIS 39680, *28 (N.D.N.Y. May 15, 2008) (citation omitted). A petitioner is not entitled to federal habeas relief based on a claimed error of the state court unless the error actually prejudiced his defense, i.e., the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht</u>, 507 U.S. at 637 (1993) (quotation omitted).

Here, the Appellate Division, Fourth Department determined that the trial court erred in admitting Detective Jones's testimony on redirect examination concerning pre-trial statements made by the victim that bolstered her trial testimony, but that such error was harmless. <u>See</u> <u>Davis</u>, 67 A.D.3d at 1397. This Court agrees that any error in the admission of the testimony at issue was harmless. Under <u>Brecht</u>, the erroneously admitted testimony cannot be said to have had a "substantial and injurious effect" on the jury's verdict considering that the prosecution's case relied primarily on the victim's rousing and graphic testimony, which detailed the brutal acts of assault, rape, and robbery perpetrated against her by Petitioner. Additionally, the physical and scientific evidence presented in the case supported and corroborated the victim's version of events. As a result, this Court cannot find that Petitioner's trial was "fundamentally unfair" due to the error and

habeas relief is not warranted for this claim. The claim is therefore dismissed in its entirety.[4]

### 3.   Verdict Against the Weight of the Evidence (Grounds Three and Four)

In grounds three and four the petition, Petitioner argues, as he did on direct appeal, that the verdict was against the weight of the evidence. See Pet. ¶ 22C, D. The Appellate Division, Fourth Department rejected these claims on the merits. See Davis, 67 A.D.3d at 1398. As discussed below, these claims are not cognizable by this Court on habeas review.

A "weight of the evidence" claim derives from CPL § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). In contrast, a legal insufficiency claim is based on federal due process principles. Id.

---

[4]

The Court notes, and as Respondent has correctly pointed out, the supporting fact section of ground two of the habeas petition also appears to challenge the weight of the evidence. See Resp't Mem. of Law at 11; Pet. ¶ 22B. To the extent, if any, Petitioner raises this claim as a challenge to the weight of the evidence, said claim is not cognizable by this Court on habeas review (see discussion below at section IV, 3) and is dismissed on that basis.

Because Petitioner's weight of the evidence claims implicate only state law, they are not cognizable in this federal habeas proceeding. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review is not available where there is simply an alleged error of state law); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255 (1923). Therefore, Petitioner's weight-of-the-evidence claims are dismissed as not cognizable.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 4, 2011
           Rochester, New York